1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

WESTERN SHOWCASE HOMES, INC.,          )
                                        )
          Plaintiff,                    )
                                        )
   vs.                                  )     2:09-cv-02341-RCJ-RJJ
                                        )
FUQUA HOMES, INC.,                      )
                                        )     **ORDER**
          Defendant.                    )
                                        )

_____   This case arises out of the alleged failure of Defendant to pay commissions owed to Plaintiff for sales of Defendant's products in Canada.  Pending before the Court is Defendant's Motion to Change Venue (#3).  For the reasons given herein, the Court denies the motion.

## I.     FACTS AND PROCEDURAL HISTORY

In November 2007 Phil Daniels, President and CEO of Defendant Fuqua Homes, Inc. ("Fuqua"), traveled to Las Vegas, Nevada to negotiate an agreement with Plaintiff Western Showcase Homes, Inc. ("Western") for Western to act as the exclusive sales representative for Fuqua's manufactured homes in Canada and other territories as agreed from time to time (the "Exclusive Territory"). (Compl. ¶¶ 5, 8).  On November 10, 2007 Daniels traveled to Las Vegas again, this time with other Fuqua representatives, to sign a dealer representative agreement (the "Agreement"). (*Id.* ¶ 6). From November 2007 through February 2008, Fuqua representatives met

1    with Western representatives several times in Las Vegas to execute the details of the Agreement.

2    (*Id.* ¶ 7). Under the Agreement, Western was to receive an 11% "discount" on all orders accepted

3    by Fuqua originating in the Exclusive Territory during the term of the agreement. (*Id.* ¶ 10).

4    Western alleges that Fuqua failed to pay discounts totaling $40,215.93 for three sales invoiced in

5    August and October of 2008. (*Id.* ¶ 16).

6         Plaintiff sued Defendant in the Clark County District Court on four causes of action: (1)

7    Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Unjust

8    Enrichment; and (4) Intentional Interference with Contractual Relations. Defendant removed to this

9    Court based on diversity of citizenship[1] and has now moved under Rule 12(b)(3) for a transfer of

10   venue to the Northern District of Texas.

11   **II.    LEGAL STANDARDS**

12        When a court makes a determination of venue under Rule 12(b)(3), the well-pled allegations

13   of the Complaint are taken as true, and any evidence submitted by the non-movant in opposition

14   to the Rule 12(b)(3) motion is viewed in the light most favorable to the non-movant. *Ginter ex rel.*

15   *Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 448–49 (5th Cir. 2008). Whether venue

16

17   [1]Plaintiff claims only $40,215.93 in damages for breach of contract and at least $10,000
     for intentional interference with contractual relations. The other claims for bad faith and unjust
18   enrichment appear implausible under the facts alleged. However, it is legally plausible that the
     claim for intentional interference with contractual relations is worth at least $34,785.08.
19   Furthermore, Plaintiff has claimed an indeterminate amount in attorneys fees, which considered
     together with compensatory damages can satisfy the requisite jurisdictional amount if the
20   underlying statute supports an award of attorneys fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d
     1150, 1155 (9th Cir. 1998). Nevada and Texas alike permit attorneys' fees in contract actions
21   based on contractual clauses providing for them, *see Kelly Broad. Co., Inc. v. Sovereign Broad.,*
     *Inc.*, 606 P.2d 1089, 1092 (Nev. 1980) (citing Nev. Rev. Stat. § 18.010), *superseded by statute*
22   *on other grounds as stated in Countrywide Home Loans v. Thitchener*, 192 P.3d 243, 254 (Nev.
     2008); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006), and the
23   contract in this case provides for attorneys' fees to the prevailing party in any litigation relating
     thereto, (*see* #3-2 ¶ P.4.). Therefore, the $75,000.01 amount-in-controversy requirement is
24   satisfied.

25                                      Page 2 of 10

1  lies in a particular district is governed by 28 U.S.C. § 1391.  Under the relevant sections of that

2  statute, venue lies where:

3      (a) A civil action wherein jurisdiction is founded only on diversity of citizenship
    may, except as otherwise provided by law, be brought only in (1) a judicial district

4      where any defendant resides, if all defendants reside in the same State, (2) a judicial
    district in which a substantial part of the events or omissions giving rise to the claim

5      occurred, or a substantial part of property that is the subject of the action is situated,
    or (3) a judicial district in which any defendant is subject to personal jurisdiction at

6      the time the action is commenced, if there is no district in which the action may
    otherwise be brought.

7

    . . . .

8

9      (c) For purposes of venue under this chapter, a defendant that is a corporation shall
    be deemed to reside in any judicial district in which it is subject to personal
    jurisdiction at the time the action is commenced. In a State which has more than one

10      judicial district and in which a defendant that is a corporation is subject to personal
    jurisdiction at the time an action is commenced, such corporation shall be deemed

11      to reside in any district in that State within which its contacts would be sufficient to
    subject it to personal jurisdiction if that district were a separate State, and, if there

12      is no such district, the corporation shall be deemed to reside in the district within
    which it has the most significant contacts.

13

14  28 U.S.C. § 1391(a), (c). These are the relevant sections of the statute, because jurisdiction in this

15  case is based purely on diversity of citizenship. (*See* #1 ¶ 11; *see also* Compl. at ¶¶ 24–50, *attached*

16  *as* #1-1 (pleading only state-law causes of action)). The subsections of § 1391(a) are disjunctive;

17  venue lies if any of these subsections is satisfied for a given district.

18      Under 28 U.S.C. § 1404, a district court may transfer a case to any other district where

19  venue lies "[f]or the convenience of parties and witnesses" even if venue is proper in the original

20  district under § 1391. § 1404(a). A party may also move for dismissal for improper venue. Fed. R.

21  Civ. P. 12(b)(3). Under 28 U.S.C. § 1406, a district determining that venue is improper has a

22  choice between dismissal or transfer to a district where venue properly lies. *See* § 1406(a). Because

23  it furthers the purpose of judicial economy, a case may be transferred under § 1406(a) even where

24  venue is proper, but where there is no personal jurisdiction over the defendant in the transferor

25  district. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962).

1    When a district court orders a change of venue, the choice of law rules of the transferor

2    jurisdiction follow the case if venue was proper there, *Van Dusen v. Barrack*, 376 U.S. 612, 639

3    (1964), but the choice of law rules of the transferee jurisdiction control where venue (or personal

4    jurisdiction) in the transferor jurisdiction was not proper, *Jackson v. West Telemarketing Corp.*

5    *Outbound*, 245 F.3d 518, 522–23 (5th Cir. 2001); *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th

6    Cir. 1983). The transferee court must determine whether the transfer had the effect of curing a

7    defect in personal jurisdiction, and if so, it applies the choice of law rules of the transferee

8    jurisdiction. *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966–67 (9th Cir. 1993).

9    A district court's rulings on venue are reviewed *de novo, see Immigrant Assistance Project*

10   *v. INS*, 306 F.3d 842, 868 (9th Cir. 2002), and underlying factual findings are reviewed for clear

11   error, *Columbia Pictures Television v. Krypton Broad., Inc.*, 106 F.3d 284, 288 (9th Cir. 1997),

12   *rev'd on other grounds*, 523 U.S. 340 (1998).

13   **III.    ANALYSIS**

14   Defendant has moved for a change of venue to the Northern District of Texas based on

15   improper venue in the District of Nevada, not for convenience of the parties and witnesses. (*See* #3

16   at 2). Therefore, the motion is a request for a transfer under § 1406, not under § 1404, and if the

17   Court grants the motion the U.S. District Court for the Northern District of Texas must then engage

18   in a choice-of-law analysis based on the choice-of-law rules of the State of Texas. *Nationwide Bi-*

19   *weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007); *see Klaxon Co. v. Stentor*

20   *Elec. Mfg.*, 313 U.S. 487, 496 (1941).

21   As Plaintiff notes, 28 U.S.C. § 1441(a) governs venue in removed actions, not § 1391,

22   *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953), and a party in a removed action may

23   not challenge venue as being improper under § 1406, but may only challenge it as being more

24   convenient elsewhere under § 1404. *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d

25

1   65, 72–73 (2d Cir. 1998).  Defendant challenged venue only under § 1406 in its motion but argued

2   under § 1404 in its reply and at the hearing.  The Court denies the motion on both grounds.

3   Defendant cannot bring a § 1406 motion in this removed case, and venue is proper in Nevada even

4   if the present motion is considered as one pursuant to § 1404.

5        First, Defendant argues that venue lies in any district in Texas under § 1391(a)(1), because

6   all defendants—there is only one Defendant in this case—reside in Texas.  This is true, but it is not

7   the whole truth.  Fuqua, the sole Defendant, is incorporated in Delaware and has its principal place

8   of business in Texas, (see #1 ¶ 6), making it a resident of either state for the purposes of diversity

9   of citizenship, see §§ 28 U.S.C. 1332(c)(1).  Defendant fails to note that in the case of corporate

10  defendants such as Fuqua, residency for the purposes of venue is defined even more broadly than

11  is residency for the purposes of diversity of citizenship.  Subsection 1391(c) states that for the

12  purposes of venue, "a corporation shall be deemed to reside in any judicial district in which it is

13  subject to personal jurisdiction at the time the action is commenced." *Id.*  Subsection 1391(c)

14  therefore makes residency for the purposes of venue coextensive with the test for personal

15  jurisdiction under the Due Process Clause.  If a court of the State of Nevada would have had

16  personal jurisdiction over Fuqua in this case on the date the action was commenced, October 6,

17  2009, (see Compl. ¶ 1), then venue is proper in this district, see § 1391(c).

18       There is only general jurisdiction over Defendant in Delaware and Texas.  Where there is

19  no general jurisdiction, the assertion of specific jurisdiction over a defendant is constitutionally

20  proper under the Due Process Clauses of the Fifth and Fourteenth Amendments when there are

21  sufficient minimal contacts with the forum such that the assertion of personal jurisdiction does not

22  offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.,*

23  *Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken*

24  *v. Meyer*, 311 U.S. 457, 463 (1940)).  The standard has been restated using different verbiage. *See*

25

1   *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act

2   by which the defendant purposefully avails itself of the privilege of conducting activities within the

3   forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S.

4   at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he

5   foreseeability that is critical to due process analysis is not the mere likelihood that a product will

6   find its way into the forum State. Rather, it is that the defendant's conduct and connection with the

7   forum State are such that he should reasonably anticipate being haled into court there." (citing

8   *Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 97–98 (1978))).

9          The Complaint, which is to be believed, alleges that Defendant "at all times relevant to this

10   matter was, doing business in Clark County in the state of Nevada." (Compl. ¶ 2). This is a

11   conclusory statement that will not support personal jurisdiction. Plaintiff must allege some

12   activities that in fact would support such a claim. Plaintiff alleges only that Defendant's agents

13   traveled to Las Vegas several times in late 2007 and early 2008 to negotiate, sign, and further

14   discuss the Agreement, and that Plaintiff conducts its business in Clark County, Nevada. (*Id.* ¶¶ 1,

15   5–7). Defendant claims that its Vice President, William beach, signed the Agreement in Texas and

16   never traveled to Nevada. (#3 at 4:3–4). Upon closer review, this is consistent with the Complaint,

17   which only explicitly alleges that "Western" signed the Agreement in Nevada after negotiations

18   with Defendant there.

19          The Fourth Circuit recently held that there was no personal jurisdiction over a foreign

20   defendant in Virginia based on electronic communications the defendant had with plaintiffs in

21   Virginia where the contract was negotiated and signed in Colorado; there was a choice-of-law

22   clause in favor of the law of Colorado; the defendant had no offices, ongoing business, or in-person

23   contact with plaintiffs in Virginia; and the work was to be performed in India. *Consulting Eng'rs*

24   *Corp. v. Geometric, Ltd.*, 561 F.3d 273, 279–80 (4th Cir. 2009). But the Seventh Circuit has held

25

1    that negotiating and signing a contract in a forum will subject a party to that forum's jurisdiction,

2    without more, even where neither party is a resident of the forum. *In re Oil Spill by Amoco off Coast*

3    *of France on March 16, 1978*, 699 F.2d 909, 917 (7th Cir. 1983) (finding that due process was not

4    offended by the Northern District of Illinois' assertion of personal jurisdiction over French and

5    Spanish parties based on the negotiation and signing in Illinois of a contract to build an allegedly

6    defective Spanish ship that spilled oil near France).  The Second Circuit has also found personal

7    jurisdiction proper in New York based purely on the final negotiation and signing of a contract

8    there. *United States v. Montreal Trust Co.*, 358 F.2d 239, 243–44 (2d Cir. 1966).

9         The Ninth Circuit has developed a three-part test: (1) the defendant must have purposely

10   availed itself of the privilege of conducting activities in the forum; (2) the plaintiff's claim must

11   arise out of that activity; and (3) the exercise of jurisdiction must be reasonable. *Shute v. Carnival*

12   *Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990).  The first prong cannot be satisfied merely by

13   entering into a contract with a forum plaintiff. *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir.

14   1991) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985)).  However, in this case,

15   Defendant negotiated the contract in Las Vegas, and the location was almost certainly selected at

16   least in part for the luxurious amenities and recreational opportunities available in Las Vegas. Also,

17   as in *Roth*, Plaintiff's efforts under the contract were to take place in Nevada where Plaintiff has

18   its offices. *See* 942 F.2d at 622.  Because Defendant signed the Agreement in Texas, the question

19   is close, but on balance the Court finds that the first prong is satisfied.  The second prong is also

20   close, but the Court finds that it is satisfied based on the contract having been negotiated in Nevada.

21   *See id.*  The third prong is itself a seven-factor balancing test under which the Court must consider:

22   "1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden

23   on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the

24   forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute;

25

6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum." *Id.* Defendant has minimally injected itself into the affairs of Nevada by visiting the state for negotiations. Although Defendant signed the Agreement in Texas, by doing so it engaged the efforts of a Nevada corporation in Nevada. Defendant corporation will not be unreasonably burdened by defending in Nevada. Conflicts of law are not a concern, because the Agreement contains a choice-of-law clause in favor of Texas law that any forum will likely honor. Neither Nevada nor Texas has a greater interest than the other in adjudicating the dispute—each state is home to one of the parties, and the subject matter of the dispute does not uniquely affect the interests of either state. Neither forum will be able to adjudicate the dispute more efficiently than the other. Although a Texas forum would be more familiar with Texas law than this Court is, this factor no longer carries great weight. In the days before electronic databases such a consideration was more important due to lack of access to other states' reporters and statute books, but today the American courts have immediate electronic access to the law of every state. This Court may research and consider Texas law when ruling on the relatively simple contractual issues in this case just as a Texas court will. Plaintiff's interest in convenient and effective relief is best served by finding venue in Nevada. An alternative forum exists in Texas. When all factors are considered, it is reasonable in this case to require Defendant to defend in Nevada. Defendant could reasonably be expected to defend in Nevada based on its negotiation of a contract in Nevada with a Nevada corporation that was to perform its work under the contract from its Nevada offices. The Court finds that the third prong is satisfied, there is specific jurisdiction over Defendant in Nevada, and therefore venue lies under 28 U.S.C. §§ 1391(a)(1) and (c).

Second, Defendant argues that venue does not lie in this district under § 1391(a)(2), because no substantial part of the events or omissions giving rise to the claim occurred in Nevada, and no substantial part of the property that is the subject of the suit is situated in Nevada. Because venue

1    lies in the District of Nevada under the "personal jurisdiction" test of §§ 1391(a)(1) and (c), the

2    Court need not engage in an analysis of the more stringent "substantial part" test of § 1391(a)(2).

3    However, the test is satisfied. The alleged wrongful acts concern the Texas Defendant's failure to

4    make payments to the Nevada Plaintiff. Where should an omission be said to have occurred?

5    Philosophically speaking, an omission "occurs" nowhere, but the Court must construe the language

6    of the statute as sensibly as possible so as to give each term some meaning. The question is where

7    the required act was *expected* to occur if performed as required. Where was payment to occur in

8    this case? Paragraph F of the Agreement is unclear on this point. It indicates that payment was to

9    be made "by check payable to *Dealer*." (#3-2 ¶ F.7.). Drawing a reasonable inference in favor of

10   the non-movant, the Court finds that Defendant was expected to mail checks from Texas to Plaintiff

11   in Nevada, presumably for deposit there. The act of an interstate payment can be said to occur in

12   two states. The wrong from the failure to mail a check occurs morally in the state where the drawer

13   fails to act but practically in the state where the payee is harmed by lack of payment. The Court

14   therefore finds that the second disjunctive prong of § 1391(a) is satisfied.

15       Third, Defendant argues that under § 1391(a)(3), because there is no district in which the

16   case may otherwise be brought, venue lies in any district where Fuqua was subject to personal

17   jurisdiction when the action was commenced, e.g., the Northern District of Texas. As a matter of

18   statutory interpretation, for corporate defendants § 1391(a)(3) is redundant with §§ 1391(a)(1) and

19   1391(c) read in conjunction. The latter two subsections read together make venue proper for a

20   corporate defendant wherever there is personal jurisdiction over the corporate defendant when the

21   action is commenced. Hence, there will never be any need to resort to § 1391(a)(3) with respect

22   to a corporate defendant, because there will never be a case where "there is no district in which the

23   action may otherwise be brought" where there is personal jurisdiction in any district at all. In other

24   words, because of the broad grant of venue under § 1391(c) with respect to corporate defendants,

25

a district court will only ever make it to the § 1391(a)(3) analysis where it has already determined there is no jurisdiction in any American court. As discussed, *supra*, under § 1391(a)(3) venue lies in either Nevada or Texas.

Defendant also argues that there is a forum selection clause in the Agreement in favor of Texas. Defendant conflates choice of law with forum selection. The clause cited is not a forum selection clause, but a choice-of-law clause. (*See* #3-2 at ¶ Q.6. ("This agreement shall be governed by and construed in accordance with the laws of Texas, U.S.A.")).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Change Venue (#3) is DENIED.

DATED: This ___3rd___ day of May, 2010.

ROBERT C. JONES
United States District Judge