1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WESTERN SHOWCASE HOMES, INC.,  )
                                                      )
                          Plaintiff,         )          Case No.: 2:09-cv-02341-GMN-RJJ
        vs.                                      )
                                                      )          **ORDER**
FUQUA HOMES, INC.,                     )
                                                      )
                          Defendant.        )
                                                      )

        Before the Court are Plaintiff Western Showcase Homes, Inc. 's ("WSH") request for

default judgment, WSH's Statement in Support of Default Judgment (ECF No. 45), WSH's

Exhibits in Support of Default Judgment (ECF No. 47), WSH's Supplemental Brief (ECF

No. 48), WSH's Statement of Attorney's Fees (ECF No. 49), and WSH's Bill of Costs (ECF

No. 50).  The Court also held an evidentiary hearing on WSH's request for default judgment

on May 12, 2011, at which only WSH appeared. (*See* ECF No. 46.)

        In light of the evidence and argument presented at the hearing and the filings that

have been submitted to the Court, it is hereby ORDERED, ADJUDGED and DECREED as

follows:

        1.        The Court has considered each of the following factors with regard to WSH's

        request for the entry of default judgment against Defendant Fuqua Homes, Inc.

        ("FHI") pursuant to Fed. R. Civ. P. 55(b)(2): (a) the possibility of prejudice to the

        Plaintiff; (b) the merits of Plaintiff's substantive claim; (c) the sufficiency of the

        Complaint; (d) the sum of money at stake in the action; (e) the possibility of a

        dispute concerning material facts; (f) whether the default was due to excusable

        neglect; and (g) the strong policy favoring decisions on the merits. *Eitel* v. *McCool,*

782 F.2d 1470, 1471-72 (9th Cir. 1986). Because of FHI's default, (*see* ECF No. 40), the Court has also accepted the well-pleaded allegations of WSH's Complaint relating to liability as true, except as to the amount of damages. *See Fair Housing of Marin* v. *Combs,* 285 F.3d 899, 906 (9th Cir. 2002).

2.      The Court hereby concludes that the *Eitel* factors set forth in Paragraph 1 weigh in favor of entry of a default judgment against FHI, and that a default judgment is warranted and appropriate in this action.

3.      The Court also concludes that WSH has demonstrated that FHI breached its contractual obligations under the Dealer Agreement, breached the covenant of good faith and fair dealing with regard to said contractual obligations, and intentionally interfered with WSH's existing contractual relationships.  Because proximate cause exists between these actions or inactions on the part of FHI and the damages incurred by WSH, the Court hereby awards WSH damages as set forth in Paragraph 11 below.

4.      Specifically, the Court awards $78,061.85 on the breach of contract claim because this is the total amount due and owed to WSH by FHI under the express terms of the Dealer Agreement.

5.      Specifically, the Court awards $80,255.66 on the breach of the covenant of good faith and fair dealing claim.  This represents the $10,000.00 in damages that WSH sustained when its expenditures and efforts to market, promote, and sell its products in Canada were entirely frustrated by FHI's breach of the covenant of good faith and fair dealing.  This sum also represents the $70,255.66 in lost profits that WSH would have earned but for FHI's breach.  Because WSH's business is established and has reliably yielded a ten (10%) percent return on capital investment per fiscal quarter, it is reasonably ascertainable that WSH would have reaped profits of $70,355.66 over the course of the nine (9) intervening fiscal quarters--four in

1    2009, four in 2010, and one in 2011--had FHI not breached the covenant of good

2    faith and fair dealing and properly paid the $78,061.85 due under the Dealer

3    Agreement in 2008 ($78,061.85 x 0.10 x 9 = $70,355.66[1]). *See Knier v. Azores*

4    *Const. Co.*, 368 P.2d 673, 675 (Nev. 1962); *see also Fox Grain and Cattle Co. v.*

5    *Maxwell*, 885 P.2d 432, 436 (Mont. 1994) ("When a breach of that covenant [of good

6    faith and fair dealing] occurs, contract damages are appropriate."); *Mundy v.*

7    *Household Finance Corp.*, 885 F.2d 542, 544 (9th Cir. 1989) (explaining that, under

8    California law, traditional contractual remedies are available for claims based on a

9    breach of the covenant of good faith and fair dealing).

10    6.      Specifically, the Court awards $34,549.16 on the intentional interference with

11    contractual relations claim because this represents the damage proximately caused by

12    FHI's interference with existing contracts between WSH and third parties such as

13    Parkbridge, Country Hills Homes Sales, Inc., and CanAm.

14    7.      The Court further concludes that WSH has demonstrated that it is entitled to

15    recover the $48,438.00 in attorneys' fees set forth in Paragraph 11 below.  These

16    attorneys' fees are awardable under the Dealer Agreement entered into between

17    WSH and FHI and pursuant to Nev. Rev. Stat. § 18.010(2)(b) because of the

18    vexatious litigation and discovery tactics employed by FHI during the course of this

19    lawsuit.  These fees also represent a reasonable number of hours spent on this case

20    multiplied by reasonable hourly fees charged by WSH's counsel.  None of the factors

21    set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) warrant

22    an increase or decrease of this lodestar amount.

23

24

25

[1] In the calculations it provided, WSH did not compound the gains yielded by the initial capital. (*See* Statement in Support of Hearing 11: 10-18, ECF No.45.)  Therefore, the Court also did not.

8.      The Court also finds that WSH, as the prevailing party, is entitled to costs in the amount of $2,443.73, (*see* Bill of Costs, ECF No. 50), pursuant to Fed. R. Civ. P. 54(d)(1).

9.      Because the Dealer Agreement is governed by the laws of Texas and because Texas allows for prejudgment interest on breach of contract damages at a rate of five (5%) percent per year, *see* Tex. Fin. Code § 304.003(c)(2); *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 319-20 (Tex. App. 2005)*,* the Court finds that WSH is entitled to $6,865.16 in prejudgment interest.  This interest began to accumulate on October 6, 2009--the date on which WSH filed its Complaint-- because that was the earlier of (a) the date the plaintiff filed suit or (b) 180 days after the defendant received written notice of the plaintiff's claims. *See* Tex. Fin. Code § 304.104; *Miga v. Jensen*, 96 S.W.3d 207, 217 n.57 (Tex. 2002) (applying the requirements of section 304.104 in a breach of contract action).  Therefore, it accumulated for 642 days.

10.     Finally, the Court finds that the recovery set forth below does not differ in kind and does not exceed the amount prayed for in WSH's Complaint.

11.     In light of the findings set forth above and articulated at the hearing, and, pursuant to Fed. R. Civ. P. 55(b)(2), the Court hereby enters default judgment and awards damages in favor of WSH as follows:

    a.      For breach of contract in the amount of $78,061.85;

    b.      For breach of the covenant of good faith and fair dealing in the amount of $80,255.66;

    c.      For intentional interference with contractual relations in the amount of $34,549.16;

    d.      For attorneys' fees in the amount of $48,438.00;

e.        For costs in the amount of $2,443.73; and

f.        For prejudgment interest in the amount of $6,865.16.

DATED this 12th day of July, 2011.

_____

Gloria M. Navarro
United States District Judge